UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Plaintiff,

v.

OLD REPUBLIC GENERAL INSURANCE
COMPANY, *et al.*,

_____/

Case No. 1:19-cv-653

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This lawsuit involves an insurance coverage dispute under Michigan's No-Fault Act, M.C.L. § 500.3101 *et seq*. This matter is now before the Court on a motion for summary judgment filed by plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") against defendant Travelers Indemnity Company of Connecticut ("Travelers") (ECF No. 28).

**I.**    **Background**

The lawsuit arises out of a motor vehicle accident that occurred on February 14, 2018. On that date, State Farm's insureds, Cheryl Battle, Richelle McFail, Jewell Gillespie, and Malik Seyed were passengers in a 2015 Chevrolet Express Van [sometimes referred to as the "van"]. Amend. Compl. at PageID.24. All of State Farm's named insureds sustained personal

1

injuries as a result of being involved in the accident and each presented claims for personal insurance benefits to State Farm. *Id*.

On or about January 17, 2019, State Farm filed a complaint in the Kent County Circuit Court naming four defendants: Old Republic Insurance Company and Old Republic General Insurance Company (both referred to as "Old Republic"); Sedgwick Claims Management; and, VPSI Titling Company ("VPSI") to resolve the insurance coverage dispute. *See* Compl. (ECF No. 1-2). State Farm filed an amended complaint adding defendant Travelers. *See* Amend. Compl. (ECF No. 1-3). State Farm identified VPSI as the owner of the vehicle, which was insured by Old Republic, Sedgwick, and Travelers. *Id*. at PageID.24-30.

State Farm further alleged that:

> 12. Upon information and belief, Old Republic, Sedgwick, and Travelers are admitted insurers under MCL 500.3163; MSA 24.13163.
>
> 13. Pursuant to the Michigan No-Fault Act, specifically MCL 500.3114(2) a person suffering accidental bodily injury while an operator or passenger of a motor vehicle operated in the business of transporting passengers shall receive the personal injury benefits to which the person is entitled from the insurer of the motor vehicle occupied.
>
> 14. State Farm has extended personal protection insurance benefits to Cheryl Battle, Richelle McFall, Jewell Gillespie and Malik Seyed, despite the fact that it is not in the highest order of priority, pursuant to MCL 500.3114(2); MSA 24.13114(2), because it is in the priority scheme as the no-fault insurer of each of these four individual's person al motor vehicles.

*Id*. at PageID.1-3. Travelers removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). *See* Notice of Removal (ECF No. 1). This Court entered a stipulated order (ECF No. 21), which dismissed all defendants except Travelers.

2

Three counts remain before the Court.  In Count VI ("Claim against Travelers"), State Farm alleged that:

> The 2015 Chevrolet Express Van, owned by VPSI Titling Company and insured by Travelers, was being operated in the business of transporting passengers, and therefore Travelers is in the highest order of priority for providing personal protection insurance benefits to Cheryl Battle, Richelle McFall, Jewell Gillespie and Malik Seyed.

Amend. Compl. ¶ 44 at PageID.30.  State Farm alleged that because Travelers is a higher order priority insurer under § 500.3114(2), it is obligated to reimburse State Farm for all of the payments for personal protection insurance benefits that State Farm extended to its insureds Cheryl Battle, Richelle McFall, Jewell Gillespie, and Malik Seyed.  *Id*. at ¶ 45, PageID.30-31.  State Farm seeks a total amount of $219,070.48 "along with any additional incurred claims, an[d] interest, costs, attorney fees and any other payment as allowed by law or as the Court deems appropriate."  *Id*. at PageID.31.

In Count VII ("Subrogation: Travelers"), State Farm alleged: that it is subrogated to the rights of its insureds Battle, McFall, Gillespie and Seyed; that Travelers was put on notice of this accident within one year of the date of the accident, but denied the insureds' claims for personal protection insurance benefits; that each of the insureds have a cause of action against Travelers, based on its failure to provide or reimburse each individual for their personal protection insurance benefits paid by State Farm; that while State Farm was neither statutorily nor contractually obligated to pay personal protection insurance benefits for the insureds, it did so to protect its own interest; that State Farm paid a debt for which Travelers is primarily liable; that

State Farm is subrogated to the rights of the insureds; and that State Farm is entitled to bring the insureds' cause of action against Travelers in the amount of $219,070.48. *Id*. at PageID.31-32.

In Count VIII[1], State Farm states that pursuant to M.C.L. § 500.3114(2), it is entitled to declaratory judgment that Travelers "[is] responsible for payment of no-fault benefits to Cheryl Battle, Richelle McFall, Jewell Gillespie and Malik Seyed, as a result of injuries they sustained in the February 14, 2018 car accident, rather than State Farm and that State Farm is entitled to reimbursement of all previously advanced payments." *Id*. at PageID.32.

Travelers moved for partial summary judgment on the ground that under the one-year back rule in § 500.3145(1), State Farm cannot seek reimbursement from Travelers for no-fault benefits paid prior to July 10, 2018, one year before State Farm filed the amended complaint. *See* Travelers' Motion (ECF No. 12, PageID.90); Order (ECF No. 32, PageID.805). The Court granted the motion and concluded that State Farm's action against Travelers did not begin until July 10, 2019, the date State Farm filed the amended complaint to include its claims against Travelers. Order at PageID.805-808.

Now, State Farm has moved for summary judgment on its claim that Travelers is a higher order priority insurer under § 500.3114(2) and is obligated to reimburse State Farm for all of the payments made to its insureds for no-fault benefits.

---

[1] The Court notes that State Farm's Amended Complaint referred to "Count VIII" as "Count VII." *See* Amend. Compl. at PageID.32.

## II. State Farm's motion for summary judgment

### A. Legal standard for summary judgment

State Farm has moved for summary judgment pursuant to Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Discussion

### 1. M.C.L. § 500.3114 ("Accidental bodily injury while operator or passenger; priority among insurers for payment of benefits")

State Farm contends that it is entitled to summary judgment "because the primary purpose of the vehicle insured by Defendant [Travelers] and occupied by Cheryl Battle, Richelle McFall, Jewell Gillespie, and Malik Seyed on February 14, 2018, was to transport passengers, and the transportation of passengers was a primary part of the business of VPSI Titling Company (the owner of the vehicle occupied), which makes Defendant [Travelers] higher in the order of priority for the payment of no-fault benefits under MCL § 500.3114(2)." *See* State Farm's Motion at PageID.659-660. Travelers acknowledges that the van "was owned VPSI Titling Company and insured by your Defendant [Travelers]", that State Farm insured four passengers in the van, that State Farm paid benefits pursuant to M.C.L. § 500.3114(1), and that "[a]t issue in this case and to be decided by Motion" is whether the State Farm insured passengers were in "a motor vehicle operated in the business of transporting passengers" pursuant to M.C.L. § 500.3114(2). Travelers' Response (ECF No. 33, PageID.814) (emphasis omitted).

"Unless an exception applies, MCL 500.3114(1) provides that an injured party must turn to his or her own insurer for payment of no-fault benefits, regardless of whether the injured party's insured vehicle was involved in the accident." *Ahee v. City of Novi*, No. 341072, 2019 WL 1270646 at *2 (Mich. App. March 19, 2019), citing *Farmers Insurance Exchange v. AAA of Michigan*, 256 Mich. App. 691, 695, 671 N.W.2d 89 (2003).[2]  Here, State Farm contends that

---

[2] M.C.L. § 500.3114(1) provides that:

6

Travelers is responsible for its insured's expenses pursuant to an exception in M.C.L. § 500.3114(2), which provides that,

> A person who suffers accidental bodily injury while an operator or a passenger of a motor vehicle operated in the business of transporting passengers shall receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle.

M.C.L. § 500.3114(2).[3]

Michigan courts apply the "primary purpose/incidental nature test" to determine whether a motor vehicle was operated in the business of transporting passengers for purposes of M.C.L. § 500.3114(2). *See Farmers Insurance Exchange*, 256 Mich. App. 691, 701; *Ahee*, 2019 WL 1270646 at *2-*3. For example, in *Farmers Insurance Exchange*, the court employed the test to determine whether a day-care provider driving children to school was in the business of transporting passengers:

> Applying that test to the instant case, we conclude that the day-care provider's driving of the children to school would not fall within the scope of subsection 3114(2) because the record indicates, and the parties agree, that (1) her driving of the children to school in her vehicle occurred incidentally to the vehicle's

---

Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. A personal injury insurance policy described in section 3103(2) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motorcycle accident. If personal protection insurance benefits or personal injury benefits described in section 3103(2) are payable to or for the benefit of an injured person under his or her own policy and would also be payable under the policy of his or her spouse, relative, or relative's spouse, the injured person's insurer shall pay all of the benefits up to the coverage level applicable under section 3107c to the injured person's policy, and is not entitled to recoupment from the other insurer.

M.C.L. § 500.3114(1) (footnotes omitted).

[3] The Court notes that there are eight exceptions to the application of M.C.L. § 500.3114(2). However, neither party contends that any of these exceptions apply in this case. *See* M.C.L. § 500.3114(2)(a)-(h).

7

primary use as a personal vehicle, and (2) her transportation of the children to and from school constituted an incidental or small part of her day-care business. Furthermore, a conclusion that the day-care provider's incidental driving of the children to school did not constitute the operation of a vehicle in the business of transporting passengers under subsection 3114(2) is consistent with this Court's observations that the Legislature intended subsection 3114(2) to apply in "commercial" situations. . .

*Id*. at 701-02 (citation omitted).   In *Ahee*, the court refined the test to two inquiries:

[T]he relevant inquiries under the primary purpose/incidental nature test are (1) whether the transportation of passengers is the primary purpose for which the vehicle is used and (2) whether the transportation of passengers is a primary, as opposed to incidental, component of the overall business or activity of the operator.

*Ahee*, 2019 WL 1270646 at *3.

### 2. State Farm's insured Jewell Gillespie rented the van

State Farm's insured Jewell Gillespie rented the van as part of the Michigan Department of Transportation (MDOT) program called the MichiVan Commuter Vanpool Program.   *See* Affidavit of Noah Fox (ECF No. 33-2, PageID.838, 841).[4]   Fox explained that,

The cost of the MichiVan Program is subsidized in part by MDOT and user fees. The MDOT partially subsidizes the purchase costs of the vans used by Enterprise Rideshare, but "Enterprise" is the owner of the van, pays for the van and titles the van.

*Id*. at PageID.839.

As the Vanpool Coordinator, Gillespie rented the van on a month-to-month basis. *See* Enterprise Rideshare Vanpool Coordinator and Optional Driver Agreement (October 26, 2017)

---

[4]   Mr. Fox is an employee of Enterprise Leasing Company of Detroit, LLC, who lists his "titles and duties" as "Group Commute Manager; Manage the Commute with Enterprise vanpool operations in the State of Michigan." *See* Fox Aff. (ECF No. 33-2, PageID.837).

8

(ECF No. 33-8, PageID.928-937). The agreement between Gillespie and Enterprise Rideshare ("Enterprise") stated that Enterprise "will provide the Vanpool Coordinator with the use of the vehicle(s)." Agreement at ¶ 1 (ECF No. 33-8, PageID.928).

In ¶ 7, Gillespie agreed to the following "Use of Vehicle":

> The Vehicle will be used solely to pick up, transport and deliver other vanpool/carpool participants to and from their residences (or other similar locations agreed to by the Vanpool Coordinator, as set forth in this Agreement) and their places of employment. The Drivers may use the Vehicle for occasional and limited personal use so long as the total of personal miles plus commute miles for the month do not exceed the monthly allowance for the Vehicle.

Agreement at ¶ 7.a. (ECF No. 33-8, PageID.930). Gillespie's use of the van was further restricted in ¶ 7.b., which provided in part:

> In addition to the other restrictions in this Agreement, Vanpool Coordinator agrees not to use (if Vanpool Coordinator is also a Driver) nor allow use of, the Vehicle under any of the following conditions:
>
> i. Vehicle shall not be driven by any person other than the Enterprise-approved Driver.
>
> ii. Vehicle shall not be used for transporting persons for hire; as a school bus; or for driver training.
>
> iii. Vehicle shall not be used for transport of products for hire as a common carrier, a contract carrier, or a private carrier of property. . . .

*Id*. at ¶ 7.b.

Fox explained that Vanpool passengers pay either the Vanpool Coordinator or Enterprise to participate:

> Enterprise Rideshare Commuter Vanpool drivers and passengers may pay the Vanpool Coordinator directly on a monthly basis or may participate in the "passenger billing (IPB) service" whereby the passenger pays Enterprise Directly. Attached hereto as Exhibit F is the 10/15/2017 "Individual Passenger Billing (IPB)

> Amendment" signed by Michael Brownlee, he being the driver of the involved vehicle at the time of the 2/14/18 accident.   The "Amendment" confirms that the involved vehicle is being rented, and that the passenger is paying for rent and other items.

Fox Aff. at PageID.841-842.[5]

After explaining the history of the various leasing entities, Fox stated that "[t]he motor vehicle involved in the 2/14/18 accident was owned by VPSI Titling Company, and was a 2015 Chevrolet Express Van which could seat 12 individuals."   Fox Aff. at PageID.843. *See* Certificate of Title (ECF No. 28-3).   Fox explained that as the result of a merger, " 'Enterprise' modified but maintained the VPSI Titling Company, trust [sic] and allowed Enterprise Groups the right to use the vehicles."   *Id*. at PageID.840.   The relationship between VPSI and Enterprise, and Gillespie's rental agreement with Enterprise, are consistent with Fox's statement that

> At the time of the involved 2/14/18 accident, VPSI Titling Company (1) was not in the business of renting vans for vanpools, (2) did not have a contract with MDOT to participate in the MichiVan Commuter Vanpool program, (3) Transporting passengers was not a function of VPSI Titling's business. Rather, VPSI Titling's only business, was holding titles to rental vehicles.

*Id*. at PageID.842.

### 3.  VPSI's operation of the van for purposes of M.C.L. § 500.3114(2)

#### a.  The first inquiry: whether the transportation of passengers is the primary purpose for which the vehicle is used?

---

[5] The Court notes that according to the State of Michigan Crash Report (ECF No. 28-1, PageID.681), the driver of the van was Michael Wayne Bramlett.   Neither party clarifies whether "Michael Wayne Bramlett" is the same person as "Michael Brownlee.".

As to the first inquiry, the Court concludes that Vanpool Coordinator Gillespie leased the van for the primary purpose of transporting passengers in the Vanpool. Section 7.a of Gillespie's month-to-month rental agreement with Enterprise explicitly stated that "[t]he Vehicle will be used solely to pick up, transport and deliver other vanpool/carpool participants to and from their residences (or other similar locations agreed to by the Vanpool Coordinator, as set forth in this Agreement) and their places of employment." While VPSI held the title to the van, Enterprise leased the van to Gillespie and set the terms for Gillespie's use of the van.

    **b.    The second inquiry: whether the transportation of passengers is a primary, as opposed to incidental, component of the overall business or activity of the operator**

As to the second inquiry, the Court concludes that Vanpool Coordinator Gillespie operated the van for the primary activity of transporting passengers in the Vanpool. The Vanpool passengers either paid Gillespie directly on a monthly basis or participated in Enterprise's passenger billing service. While VPSI held the title to the van for use by Enterprise, which in turn leased the van to Gillespie, VPSI had no role in transporting the members of Gillespie's Vanpool. In short, the transportation of passengers was not a component of VPSI's overall business or activity.

    **c.    Conclusion**

For these reasons, the Court concludes that VPSI was not "in the business of transporting passengers" for purposes of M.C.L. § 500.3114(2) and that State Farm's motion for summary judgment should be denied.

#### 4. Travelers' request under Fed. R. Civ. P. 56(f)(1)

Travelers did not file a cross-motion for summary judgment. Rather, Travelers included a request for judgment in its response to State Farm's motion entitled, "Defendant Travelers Indemnity Company of Connecticut's response to plaintiff State Farm Mutual Automobile Insurance Company's motion for summary judgment and Travelers' request pursuant to Fed. R. Civ. P. 56(j) [sic] that the court grant summary judgment for the non-moving party, defendant Travelers Indemnity Company of Connecticut" (ECF No. 33). At the conclusion of its response, Travelers asked the Court to "grant its Counter-Motion for Summary Disposition and/or pursuant to F.R.C.P.56(f)(1) grant Summary Judgement [sic] for a Non-Movant." Travelers' Response at PageID.834.

Fed. R. Civ. P. 56(f)(1) allows the court to grant judgment independent of a motion for summary judgment: "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant[.]". Here, Travelers' request for judgment is not before the undersigned. There is no record that the Court gave notice and a reasonable time for State Farm to respond to Travelers' request for judgment. While Judge Maloney may determine to exercise the power authorized by Fed. R. Civ. P. 56(f)(1) after giving State Farm the required notice and opportunity to respond, Travelers "has no right to insist on such relief." *See generally*, *Marshall v. Grand Trunk W. R.R. Co.*, No. 1:09-cv-754, 2011 WL 13359596 at *2 (W.D. Mich. March 22, 2011).

### III. Recommendation

For the reasons set forth above, I respectfully recommend that State Farm's motion for summary judgment (ECF No. 28) be **DENIED**.

Dated: August 27, 2021

/s Ray Kent
Ray Kent
United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).